UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN P.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-276 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, John P., on July 31, 2019. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, John P., filed an application for Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of May 12, 2010. (Tr. 1144). A hearing was held on January 23, 2019, before Administrative Law Judge (ALJ) Romona Scales on remand from the Appeals Council pursuant to a remand from the United States District Court for the Northern District of Indiana. (Tr. 1144). Vocational Expert (VE) Kelly Roberts and Medical Expert (ME) Ronald Kendrick appeared and testified at the hearing. (Tr. 1144). The ALJ issued an unfavorable decision on April 22, 2019. (Tr. 1144-1164). John P. then filed this petition for judicial review on July 31, 2019. (Tr. 1-3).

John P. met the insured status requirements of the Social Security Act through September 30, 2020. (Tr. 1146). At step one of the five-step sequential analysis for determining whether an

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

individual is disabled, the ALJ found that John P. had not engaged in substantial gainful activity since May 12, 2010, the alleged onset date.  (Tr. 1147).

At step two, the ALJ determined that John P. had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, chronic pain disorder, obesity, and anxiety disorder.  (Tr. 1147).  The ALJ found that John P.'s severe impairments significantly limit his ability to perform basic work activities.  (Tr. 1147).  Furthermore, the ALJ found that John P. had the following non-severe impairments:  asthma/allergies, hypertension, and depression.  (Tr. 1147).

At step three, the ALJ concluded that John P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 1148).  The ALJ indicated that the medical evidence did not document listing level severity and that no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination.  (Tr. 1148).  The ALJ indicated that she considered Listing 1.04, as well as Social Security Ruling 02-1p in determining whether John P.'s impairments met or medically equaled a listing.  (Tr. 1148).

The ALJ also considered whether the severity of John P.'s mental impairment met or medically equaled the criteria of Listing 12.06.  (Tr. 1148).  The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

(Tr. 1148).  The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an

2

extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 1148). The ALJ found that John P. had a mild limitation understanding, remembering, or applying information; a mild limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a mild limitation adapting or managing himself. (Tr. 1149). Because John P.'s mental impairment did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied. (Tr. 1149). Additionally, the ALJ determined that John P. did not satisfy the paragraph C criteria. (Tr. 1150).

After consideration of the entire record, the ALJ then assessed John P.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; frequently reach in all other directions; occasionally overhead reach bilaterally; no exposure to hazards, including slippery, wet, uneven surfaces, moving machinery and unprotected heights; can understand, remember and carryout simple, routine tasks/instructions; maintain adequate attention and concentration for said tasks/instructions; interact appropriately but requires work free of fast paced production and quotas meaning no tandem tasks, machine regulated work or hourly production requirements, and can manage changes in routine unskilled work environment.

(Tr. 1150). The ALJ explained that in considering John P.'s symptoms she followed a two-step process. (Tr. 1150). First, she determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce John P.'s pain or other symptoms. (Tr. 1150). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited John P.'s functioning. (Tr. 1150).

After considering the evidence, the ALJ found that John P.'s medically determinable

3

impairments reasonably could be expected to produce his alleged symptoms. (Tr. 1152). However, she concluded that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1152). The ALJ noted that John P.'s allegations of symptoms consistent with chronic pain were not accepted as alleged because they were not consistent with the objective medical evidence and other observations about John P.'s conduct. (Tr. 1152).

At step four, the ALJ determined that John P. was unable to perform any past relevant work. (Tr. 1162). Considering John P.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including interviewer (34,000 jobs nationally), gaming surveillance officer (4,400 jobs nationally), and receptionist (90,000 jobs nationally). (Tr. 1163). The ALJ found that John P. had not been under a disability, as defined in the Social Security Act, from May 12, 2010, through the date of the ALJ's decision, April 22, 2019. (Tr. 1164).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83

L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  **20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**.  If he is, the claimant is not disabled, and the evaluation process is over.  If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.

5

If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see* ***Biestek v. Berryhill****,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

John P. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits. In his appeal, John P. argues that: (1) the ALJ erred in assessing his mental RFC; (2) the ALJ erred in assessing his physical RFC; (3) the ALJ erred in weighing medical opinion evidence; and (4) the ALJ erred in assessing his subjective allegations that addressed the intensity, persistence, or limiting effects of his pain and symptoms.

First, John P. argues that the ALJ erred in assessing his mental RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart*,** 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations"); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities"). The RFC is based upon medical evidence—including

6

statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but [she] must provide a 'logical bridge' between the evidence and [her] conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v.*

7

*Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

The ALJ found that John P. suffered from the severe mental impairment of anxiety disorder.  The ALJ determined that John P.'s mental impairment produced a mild limitation understanding, remembering, or applying information; a mild limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a mild limitation adapting or managing himself.  (Tr. 1149).  In assessing the mental RFC, the ALJ found that John P. could perform sedentary work with the following additional limitations:  understand, remember and carryout simple, routine tasks/instructions; maintain adequate attention and concentration for said tasks/instructions; interact appropriately; and manage changes in routine unskilled work environment. (Tr. 1150). However, the ALJ found that Joh P. required work free of fast paced production and quotas meaning no tandem tasks, machine regulated work, or hourly production requirements. (Tr. 1150).

John P. contends that, although the ALJ found that his mental impairment produced moderate restrictions in concentration, persistence, or pace, the ALJ omitted it from her assessment of his mental RFC.  John P. argues that by failing to include this finding, the ALJ only addressed the complexity of tasks that he could perform and did not account for the limitations he could face when he attempted to perform routine tasks or instructions in a matter that was consistent with competitive employment.

The Commissioner relies on cases including, *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) and *Kuykendoll v. Saul*, 2020 WL 836605, at *4 (7th Cir. 2020), where the Seventh Circuit affirmed an RFC assessment that included a limitation to simple, routine, and repetitive tasks as accommodating for the plaintiff's "moderate" difficulties in concentration, persistence, or pace, and also an RFC limitation to simple, routine, and repetitive work tasks adequately accounted for the moderate limitation in concentration, persistence, or pace.  The Seventh

Circuit, however, has made clear that it does not read *Jozefyk* "to save shortfalls in the ALJ's analysis." Rather, in that case, it determined the shortfall was harmless because "the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support such limitations." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (reversing the ALJ's decision to omit her own finding of the plaintiff's "moderate difficulties maintaining concentration, persistence, or pace" from the mental RFC when the "medical evidence" and the plaintiff's testimony "plainly shows that [the plaintiff suffers from CPP limitations"). [2]

The Seventh Circuit held that "when it comes to the RFC finding … the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence, or pace." *Crump*, 932 F.3d at 570 (internal citations omitted). "An ALJ must incorporate a claimant's limitations, including moderate CPP limitations, when crafting the RFC …," for courts "have frowned at the notion that restriction to simple tasks adequately accommodates moderate CPP limitations." *Bruno v. Saul*, 817 Fed.Appx. 238, 242 (7th Cir. 2020). The concern is that by imposing a restriction to simple tasks as a way to account for moderate CPP limitations, the restriction will then be used as a "one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms." *Bruno v. Saul*, 817 Fed.Appx. at 242. In *Bruno*, the ALJ sufficiently accounted for the plaintiff's limitations in concentration, persistence, and pace when the RFC limited him to simple routine tasks because the ALJ made a specific finding that the plaintiff "struggles to concentrate only when the assignment at hand is a complex one." The ALJ

---

[2] Concentration, persistence, and pace are often referred to as CPP limitations. CPP "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate." *Bruno v. Saul*, 817 Fed.Appx. 238, 241-42 (7th Cir. 2020) (internal citations omitted).

further explained that she limited the plaintiff to simple routine tasks specifically because "evidence of decreased concentration, when handling more complex tasks, as evidenced by past poor performance on long tests and testimony that he was unable to keep a job due to being unable to pass an entrance test" but there was "no evidence that he was unable to maintain focus at his present job." ***Bruno v. Saul***, 817 Fed.Appx. at 242.

Here, the ALJ found that John P. had a moderate limitation in concentrating, persisting, or maintaining pace. (Tr. 1149). Despite that finding, the ALJ made no reference of it in the RFC.  The ALJ did, however, find that John P. could perform work that involved simple and routine tasks and instructions but that he could not perform work that involved fast-paced production requirements. (Tr. 1150). As discussed above, the Seventh Circuit has unambiguously stated that imposing a restriction to simple tasks does not justify an RFC finding that omits moderate CPP limitations without more. ***Bruno v. Saul***, 817 Fed.Appx. at 242; ***Crump***, 932 F.3d at 570.  The ALJ has applied the "one-size-fits-all" standard here.  Even if that was not her intention, it is not the court's job to guess why she failed to provide any reasoning as to this omission. Therefore, the ALJ erred when she did not explain any connection, or lack thereof, between her finding that John P. was moderately limited in concentration, persistence, or maintaining pace, and her conclusion that John P. could perform simple and routine tasks. *See **Moore v. Colvin**,* 743 F.3d 1118, 1121 (7th Cir. 2014) (holding that "[a] decision that lacks adequate discussion of the issues will be remanded").

Since the Commissioner relies heavily on ***Jozefyk***, it is worth noting that facts here are the opposite of those presented in ***Jozefyk.*** There is medical evidence and testimony that, at a minimum, warrants an explanation from the ALJ as to her decision to omit her previous finding that John P. suffers from moderate CPP limitations.  John P. testified that he had difficulty thinking and concentrating, got lost in conversation, manifested fleeting eye contract due to

tearful episodes, dysphoric and anxious mood, episodes of panic, and rapid and pressured speech. (Tr. 510, 1149). As for medical evidence, Dr. Terry Shapiro opined that John P. had a moderate restriction in areas including understanding, remembering, and carrying out simple instructions and the ability to make judgement on simple work-related decisions. (Tr. 936, 938). This is in stark contrast to the absence of testimony and medical evidence in *Jozefyk*.

Next, John P. asserts that the ALJ ignored functional restrictions proposed by Dr. Shapiro.  A medical expert interrogatory was sent to Dr. Shapiro.  He opined in a narrative explanation that John P. could perform simple repetitive work.  Dr. Shapiro also identified that John P. had moderate limitations in understanding, remembering, and carrying out simple or complex instructions or making judgments on simple or complicated work-related decisions. (Tr. 936). These findings were denoted by checked boxes in a medical opinion form.  John P. claims that the ALJ ignored these moderate restrictions and instead adopted only Dr. Shapiro's narrative opinion that he could perform simple, repetitive work.  John P. also asserts that the ALJ should have included these restrictions in both her RFC assessment and in the hypothetical questions she posed to the vocational expert.  For, had the ALJ included in her hypothetical to the VE an individual who was moderately restricted in his ability to understand, remember, and carry out instructions and to make simple work-related judgments, the VE may have determined that such an individual could not sustain competitive employment.

The Commissioner maintains that the ALJ considered Dr. Shapiro's opinion which is evidenced by her "specifically acknowledging" that "Dr. Shapiro opined that the claimant has moderate limitations in understanding, remembering and carrying out simple or complex instructions or making judgments on simple or complicated work related decisions." (Tr. 1162). Additionally, the Commissioner argues that an ALJ may rely on a doctor's narrative RFC, rather than the checked boxes, when the narrative adequately captures worksheet observations.

11

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." ***Yurt v. Colvin***, 758 F.3d 850, 857 (7th Cir. 2014) (citing ***O'Connor-Spinner v. Astrue***, 627 F.3d 614, 619 (7th Cir. 2010). "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." ***Varga v. Colvin***, 794 F.3d 809, 816 (7th Cir. 2015); *see* ***Decamp v. Berryhill***, 916 F.3d 671, 676 (7th Cir. 2019) (finding "even if an ALJ may rely on a narrative explanation, the ALJ must still adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of the forms").  However, "in some cases, an ALJ may rely on the doctor's narrative RFC, rather than the check boxes, where that narrative adequately encapsulates and translates those worksheet observations." ***Brubaker v. Berryhill***, 2018 WL 2214051 at *7 (N.D. Ind. May 14, 2018) (internal citations omitted).

The case law is consistent and straightforward in assessing an individual's RFC.  The ALJ must account for all the claimant's limitations that are supported by the medical record.  Just because the ALJ came to the same conclusion as Dr. Shapiro, that John P. could perform simple repetitive work, the ALJ is still required to assess Dr. Shapiro's other findings both in her RFC and any hypothetical questions posed to the VE. The Commissioner's argument that the ALJ did incorporate Dr. Shapiro's findings because she simply listed them is unavailing.  Merriam-Webster defines "assess" as to "determine the rate or amount of (something …)" or "to determine the importance" of something. *Assess*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/assess (last visited Nov. 9, 2020).  Listing medical evidence does not equate to assessing it.

The Commissioner's argument that the ALJ was entitled to rely only on Dr. Shapiro's narrative RFC because his check box findings were consistent with his narrative, does not add

12

up. A conclusion that John P. is capable of simple, repetitive work does not seem to fully encapsulate a finding of moderate limitations in understanding, remembering and carrying out simple or complex instructions or making judgments on simple or complex instructions or making judgments on simple or work related decisions. However, the court is not forming an opinion on Dr. Shapiro's findings, but rather on the ALJ's decision to only adopt that John P. is capable of simple, repetitive work without explaining the significance of Dr. Shapiro's other findings. *See* **Decamp v. Berryhill**, 916 F.3d 671, 676 (7th Cir. 2019) (discussing **Yurt v. Colvin**, 758 F.3d 850, 854-55, 859 (7th Cir. 2014) (the court reversed and remanded even where "a narrative explanation translated the limitations identified by doctors in the check-box sections of the forms" because "the ALJ did not adequately account for the limitations identified by the doctor in the check-box section of the forms"). Therefore, the court finds that the ALJ failed to adequately account for Dr. Shapiro's findings in the check-box section.

    John P. further contends that the ALJ erred in finding that he suffered no limitations in social interaction. Dr. Shapiro opined that John P. was moderately restricted in his ability to interact appropriately with the public, supervisors, co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 937). Dr. Shapiro also found that John P. was moderately restricted in maintaining social functioning. (Tr. 940). Dr. Shapiro concluded that John P. was limited to occasional contact with the public, coworkers, and supervisors. (Tr. 944). The ALJ found that Dr. Shapiro's social limits were not supported because "[t]he claimant's girlfriend mentioned that the claimant will isolate and become irritable on 'bad days,' but he was cooperative during treatment and he works part-time as a security guard." (Tr. 1162). John P. also alleges that the ALJ did not attempt to cite a contrary medical opinion or medical authority to undermine Dr. Shapiro's opinion, and relied on her lay supposition to reject Dr. Shapiro's opinion of John P.'s limitation in social functioning.

First, the Commissioner states that the ALJ did find that John P. had a mild limitation in interacting with others, as evidenced in her findings on page 1149 of the record. Next, the Commissioner argues that the ALJ gave a reasonable explanation for not accepting Dr. Shapiro's opinion:  John P. was cooperative during treatment and interacted appropriately with financial assistance organizations; he worked part-time as a security guard; he had friends who visited him regularly; and he lived with his girlfriend.  The Commissioner also states that  and there was no medical evidence establishing that the plaintiff's anxiety was so severe that he was unable to interact appropriately. (Tr. 207, 954, 1149, 1162).  The Commissioner also claims that the ALJ's reasoning for rejecting Dr Shapiro's opinion was based on the findings of Dr. Jain, John P.'s treating psychiatrist, that John P. had no limitations in all areas of work-related social interaction. Finally, the Commissioner argues that an RFC is not a medical opinion, but rather a matter for the ALJ alone – not a treating or examining doctor – to decide. ***Thomas v. Colvin***, 745 F. 3d 802, 808 (7th Cir. 2014).

As an initial matter, nowhere in the mental RFC findings or discussion did the ALJ rely on Dr. Jain's opinions. Therefore, the Commissioner's argument that rejecting Dr. Shapiro's opinion was based on the findings of Dr. Jain is invalid.  An ALJ is in the best position to determine a witness's credibility.  An ALJ's credibility determination will be overturned only if it is "patently wrong." ***Shideler v. Astrue***, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal citations omitted). However, an ALJ still must "consider the entire case record and give specific reasons for the weight given to the individual's statements." ***Simila v. Astrue***, 573 F.3d 503, 517 (7th Cir. 2009).  It is the job of this court to "merely examine whether the ALJ's determination was reasoned and supported." ***Elder v. Astrue***, 529 F.3d 408, 413 (7th Cir. 2008).

As to medical opinions and reports, an ALJ "may not selectively consider medical reports" and must "consider 'all relevant evidence.'" ***Myles v. Astrue***, 582 F.3d 672, 678 (7th

14

Cir. 2009). While an ALJ may adopt medical opinions concerning a claimant's ability to perform work-related activities, the RFC assessment is an issue reserved for the ALJ.  **20 C.F.R. §§ 404.1545(e), 416.945(e);** *SSR 96-5p*, 1996 WL 374183, at *2 (July 2, 1996) ("[A] medical source statement must not be equated with the administrative finding known as the RFC assessment").  An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." ***Schmidt v. Astrue***, 496 F.3d 833, 845 (7th Cir. 2007).  Rather, "the determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide." ***Thomas v. Colvin***, 745 F.3d 802, 808 (7th Cir. 2014) (citing **20 C.F.R. § 404.1520(d)**).

The law distinguishes between treating physicians and non-treating physicians in social security benefit cases.  The opinion of a treating physician concerning a patient's condition is "give[n] more weight …, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." ***Misener v. Astrue***, 926 F.Supp.2d 1016, (N.D. Ind. 2013) (internal citations omitted); *see also* ***Boiles v. Barnhart***, 395 F.3d 421, 426 (7th Cir. 2005).  However, the same is not said for non-treating physicians. *See* ***Misener***, 926 F.Supp.2d at 1031 (the court found that the ALJ was never required to give special treatment to a non-treating physician's opinion when the statement in question was not a "treating physician's intake note, progression note, or diagnostic impression," rather it was "an RFC assessment, plain and simple"). Nevertheless, "an ALJ must articulate, at least minimally, his analysis of the evidence so that [the] court can follow his reasoning." ***Skarbek v. Barnhart***, 390 F.3d 500, 503 (7th Cir. 2004) (citing ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000).

Dr. Shapiro was not one of John P.'s treating physicians.  John P. agrees that Dr. Shapiro was selected by the ALJ to review John P.'s mental health history and evaluate his ability to

perform work activities. (Pet'r Br. 9). While it may be argued that Dr. Shapiro's opinion should be given less weight than a treating physician, that does not allow the ALJ to disregard his opinion entirely. It is the job of this court to determine whether the ALJ's decision to reject Dr. Shapiro's opinion, that John P. suffered from moderate limitations in social functioning, was supported by substantial evidence. ***Boiles v. Barnhart***, 395 F.3d 421, 425 (7th Cir. 2005). The ALJ supported her rejection of Dr. Shapiro's opinion with the testimony of John P. and his girlfriend. John P., allegedly, isolated and became irritable when he had "bad days." Despite that, the ALJ found that he was cooperative with medical care providers and financial assistance organizations. He worked successfully as a part-time as a security guard, even though his coworkers were friends, and he maintained relationships with friends and his girlfriend. John P. argues that that nothing from his testimony suggested that he interacted with the public, coworkers, or supervisors or that any interaction that he had with others was on more than an occasional basis. But there was also nothing in John P.'s testimony that suggested the need for limitations to be imposed while interacting with the public, coworkers, or supervisors either. While John P. might believe that the ALJ should have given more weight to Dr. Shapiro's opinion, the ALJ still articulated her reasoning for rejecting Dr. Shapiro's opinion. The ALJ's assessment of John P.'s social limitations included Dr. Shapiro's findings, but, ultimately, the testimony of John P., his girlfriend, and John P.s known interactions with others supported a contrary finding. *See **Boiles***, 395 F.3d at 425 ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence **or** authority in the record").

John P. makes three other arguments regarding his physical RFC, the ALJ's weighing of medical opinion evidence, and the assessment of some of his subjective allegations. However, because the ALJ erred in assessing parts of John P.'s mental RFC, the court need not address the

additional arguments at this time. The ALJ will have opportunity to revisit those other issues on remand.

John P. has requested that the court remand for an award of benefits.  An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits."  **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011).  The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits.  **Briscoe v. Barnhart**, 425 F.3d 345, 355 (7th Cir. 2005).  The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 24th day of November, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge